UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| *Plaintiff,* | ) ) ) | | |
| vs. | ) ) | | |
| LIBAN ABDIRAHMAN, | ) ) | Cause No. | 1:11-cr-17-WTL-KPF-5 |
| *Defendant.* | ) ) ) | | |

## ENTRY FOLLOWING BENCH TRIAL

The prosecution, the United States of America ("the Government"), seeks a criminal conviction of the Defendant Liban Abdirahman for violating 21 U.S.C. § 846 by knowingly conspiring with other persons to possess with intent to distribute and to distribute cathinone, a Schedule I Narcotic Controlled Substance, in violation of 21 U.S.C. § 841(a)(1). For the following reasons, the Court finds the Defendant Liban Abdirahman **NOT GUILTY** of the charges in the indictment.

## I. LEGAL STANDARD

In order for the Court to find the Defendant guilty of conspiracy under 21 U.S.C. § 846, the Government must prove beyond a reasonable doubt that (1) two or more persons reached an agreement to possess with intent to distribute and to distribute cathinone, a Schedule I Narcotic Controlled substance; (2) the Defendant voluntarily and intentionally joined in the agreement, either at the time it was first reached or at some later time while it was still in effect; and (3) at the time the Defendant joined in the agreement, he knew the purpose of the agreement or understanding.

The Government need not prove the commission of any overt acts in furtherance of the

conspiracy. *United States v. Shabani*, 513 U.S. 10, 15-16 (1994). However, because conspiracy is a specific intent crime, and given the unique structure of the Controlled Substances Act with regard to cathinone, the government must show that the defendant knew that khat contained a controlled substance.[1]

## II. FINDINGS OF FACT

This matter came before the Court for a bench trial from March 26, 2012 through March 30, 2012. Based on the testimony heard and the evidence adduced at trial, the Court makes the following findings of fact.

Defendant Liban Abdirahman is a cab driver in Indianapolis, Indiana. Government witness Hussein Ahmed testified that he met Abdirahman in downtown Indianapolis in 2008.

Hashim Ahmed, another cab driver, testified that he once asked Abdirahman whether he had any khat. Abdirahman told Ahmed that he did not have any, but that he delivered khat to Ohio for Yusuf Mohamed. The Court does not believe this, by itself, or in conjunction with subsequent testimony, demonstrates the existence of an agreement.

The Government introduced certain translated transcripts of wiretapped telephone calls between Abdirahman and others. For example, at 1:53 a.m. on September 16, 2010, Abdirahman called Hussein Ahmed and they discussed that Abdirahman must take his cab in for inspection later that day. Ahmed volunteers that he is expecting "a little box from somewhere." Abdirahman replies "Well, understood." Hussein then states, "It went through the bad place now." The Court would acknowledge that the "bad place" may very well be Customs. To that, Abdirahman again replies, "Well, understood." Abdirahman then begins to again discuss the

---

[1] See the Court's entry regarding the Defendant's Rule 29(a) motion for discussion of this requirement.

vehicle inspection.

At 11:15 a.m. on September 16, 2010, Abdirahman called Ahmed again. Abdirahman had earlier asked Ahmed for a phone charger, and Ahmed had given Abdirahman the keys to his apartment so that Abdirahman could get the phone charger. Abdirahman then called Ahmed to ask Ahmed what he should do with Ahmed's keys. Because Abdirahman offers to stay awake, Ahmed asks him to keep the keys for him. During this conversation, Ahmed also tells Abdirahman: "I left a small amount of khat at the house and I want the guy to sell it." The "guy" referred to here is Abdikadar Hodan.

At 1:46 p.m. on September 16, Abdirahman called Yusuf Mohamed, and left him a voicemail message. Abdirahman related that Abdi Ali brought fresh "stuff" with big and tall leaves. He (Abdirahman) offered to tell them to reserve a "kilo" for Mohamed and explained that Abdirahman had just received a kilo. He (Abdirahamn) then said that he would have divided the kilo between the two of them, but Mohamed is still sleeping. He urged Mohamed to call him back because he heard "him" say that he doesn't have much in terms of quantity.

On November 8, 2010, Abdirahman received a call from Mohamed. Mohamed was upset and nervous because he had been pulled over, and the khat he had been transporting had been seized. Mohamed explained that one of the boxes that he had been transporting was for a "guy" for whom Abdirahman had previously delivered khat, and the other box was for Abdirahman himself. Mohamed explained to Abdirahman that the box of khat for him had "A. Max" written on it. When Mohamed became increasingly upset about the seizure, Abdirahman repeatedly told Mohamed to "be thankful to God" that the police let him go.

At trial the Government introduced a summary exhibit of telephone contacts between the Defendant and other persons. This record reveals that there were 398 calls between a telephone

number registered to Mohamed and a telephone number registered to Abirahman between July 29, 1010 and August 20, 2010. Another line item on this record reveals that between August 22, 2010, and November 14, 2010, there were 216 calls between telephone numbers registered to Mohamed and Abirahman.

On February 17, 2011, Abdirahman was arrested on the instant charge. Agent Jeremy Michaelis of the FBI interviewed Abdirahman the same day. During this interview, Abdirahman admitted to personal khat usage and stated that chewing khat gave him energy. Abdirahman explained to Agent Michaelis that he obtained fresh khat in Columbus, Ohio, at the Safari Restaurant and the Banadir Mall, and that he traveled to Columbus a couple times a week to purchase khat. He consumed about $30 a week of khat himself, and the most he had ever spent on one occasion in Columbus was $50. However, Abdirahman also stated that he would collect money from his associates before traveling to Columbus, Ohio, and bring khat back for these associates. However, later in the interview, Abdirahman stated that he did not tell his associates that he traveled to Columbus, Ohio, to purchase the khat. The Defendant explained to Agent Michaelis that while he and other Indianapolis cab drivers spoke often about the availability of khat and how it could be obtained, they didn't talk about the specifics of how people got it or where they got it from.

Government witness Handule Mohamed testified that Abdirahman wired money via wire transfer service Dahabshil, Inc. on November 24, 2009, to Yasin Abdulahi, a known khat supplier. The Court does not consider Handule Mohammed a credible witness and, unless there is other verifiable evidence, it does not place much value on this testimony or the business operations of Dahabshil.

IRS Agent Eric White testified regarding a wire transfer via Western Union that occurred

on January 8, 2011. According to the receipt, Abdirahman sent $800 to an Ifrah Mohamed in Southall, United Kingdom. However, there is no evidence regarding the identity of the recipient or the purpose for this transaction, so the Court does not consider this evidence relevant to the instant charge.

### III. <u>DECISION</u>

The Court finds that Abdirahman is indeed a user of khat. The Court also believes that Abdirahman knew and communicated with persons active in conspiracies to distribute khat in the Indianapolis and Columbus, Ohio, areas. Based upon the testimony and the exhibits presented however, the Court is reluctant to find beyond a reasonable doubt that he had an agreement, express or otherwise, to possess with the intent or to distribute cathinone with any of his alleged conspirators in the Yusef Mohamed conspiracy.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court finds the Defendant Liban Abdirahman **NOT GUILTY** of the charges in the indictment.

SO ORDERED: 04/23/2012

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.